1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   LORRAINE QUIROZ,                    Case No. 8:16-cv-02127-GJS

12           Plaintiff
                                          **MEMORANDUM OPINION AND**
13        v.                              **ORDER**

14   NANCY A. BERRYHILL,[1] Acting
     Commissioner of Social Security,
15           Defendant.

16

17              **I.    PROCEDURAL HISTORY**

18        Plaintiff filed a complaint against the Commissioner of the Social Security

19   Administration ("Commissioner" or "Defendant") seeking review of the

20   Commissioner's denial of Plaintiff's applications for Disability Insurance Benefits

21   ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to

22   proceed before the undersigned United States Magistrate Judge [Dkts. 8, 10, 11] and

23   briefs addressing the disputed issues in the case [Dkt. 14 ("Pl. Mem."), Dkt. 15

24   ("Def. Mem."), and Dkt. 16 ("Pl. Reply")]. The Court has taken the parties' briefing

25   ─────────────────

26   [1] The Court notes that Nancy A. Berryhill became the Acting Commissioner of the
     Social Security Administration on January 23, 2017. Accordingly, pursuant to Rule
27   25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be
     amended to substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in
28   this action.

under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be remanded for further proceedings.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On May 22, 2013, Plaintiff filed applications for DIB and SSI, alleging that she became disabled as of February 1, 2007. [Dkt. 13, Administrative Record ("AR") 212-38.] The Commissioner denied her claims initially and upon reconsideration. [AR 94-95, 120-21, 124-35, 139-56.] Plaintiff requested a hearing. [AR 156-57.] On March 31, 2015, a hearing was held before Administrative Law Judge ("ALJ") Joan Ho. [AR 36-67.] On May 1, 2015, the ALJ issued a decision denying Plaintiff's claims. [AR 22-35, the "Decision."]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1) 416.920(b)-(g)(1). At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since February 1, 2007, the alleged onset date. [AR 24.] At step two, the ALJ found that Plaintiff suffered from the severe impairments of bipolar disorder and post-traumatic stress disorder. [AR 24-25 (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 25-26 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).]

The ALJ found that Plaintiff had the following residual functional capacity (RFC):

> Full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to work involving simple, routine and repetitive tasks, but would be able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence, and is restricted to work involving only occasional interaction with

coworkers, supervisors, and the general public.

[AR 26-28.]  Applying this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work, but determined that based on her age on the alleged onset date (23 years old), high school education, and ability to communicate in English, she could perform representative occupations such as hand packager (DOT 920.587-018), cleaner (DOT 323.687-010), and stores laborer (DOT 922.687-058) and, thus, is not disabled.  [AR 28-30.]

Plaintiff requested review of the Decision, and on September 26, 2016, the Appeals Council denied review.  [AR 1-7.]

## III.    GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in three respects:  first, by giving little weight to the opinions of Plaintiff's treating psychiatrist (Jay Leathers, M.D.) and a consultative examining psychologist (Dabney Blankenship, Ph.D.); second, by improperly evaluating Plaintiff's credibility; and third, in propounding a hypothetical to the vocational expert that failed to account for the ALJ's finding, set forth in her Step Three discussion, that Plaintiff has moderate difficulties in concentration, persistence, or pace.

3

### A. Issue One

#### 1. The Applicable Law

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine, but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ is obligated to take into account all medical opinions of record, resolve conflicts in medical testimony, and analyze evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

In conducting this analysis, generally, the opinion of a treating or examining physician is entitled to greater weight than that of a non-examining physician. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In particular, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the Plaintiff's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Id.* In addition, generally, "the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

To reject the uncontradicted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons that are supported by substantial

evidence. *Ghanim*, 763 F.3d at 1160-61; *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Ghanim*, 763 F.3d at 1161; *Garrison*, 759 F.3d at 1012; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (internal citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (internal quotation omitted).

### 2. Pertinent Medical Records

The evidence of record shows that, for the period of June 1, 2006, through February 5, 2007, Plaintiff received medical treatment at Orange County Health Care Agency ("OCHC"), with a "no show" indicated for her scheduled February 8, 2007 appointment. (AR 321-39, 391-92.) Commencing on April 24, 2013, Plaintiff was hospitalized for a week due to a manic episode with psychotic features. (AR 340, 343-44.) Following that episode, Plaintiff began receiving mental health treatment at OCHC on May 1, 2013. (*See* AR 404 – clinic visit with Dr. Khang Nguyen; AR 427 – intake assessment, in which Plaintiff reported that she had been treated in her early 20s with Paxil and Temazepam.)

On May 13, 2013, Amanda Krotzer, MFTI, performed an intake assessment of Plaintiff. (AR 412-20.) Plaintiff made odd statements, reported having mental health issues since she was a child, and exhibited delusional thinking and poor insight. (AR 412, 419.) Krotzer performed a mental status exam and found Plaintiff's memory, concentration, general fund of knowledge, insight/judgment, and impulse control to be poor, and noted that Plaintiff's mood was changeable and

5

her affect was labile.  (AR 415.)  Krotzer noted Plaintiff's May 1, 2013 diagnosis of

Bipolar I Disorder and GAF assessment of 40.[2]  (AR 417.)

Also on May 13, 2013, Dr. Leathers met with Plaintiff for 50 or so minutes.

Plaintiff complained that her psychiatric medications were not working and of poor

sleep.  Her mother advised Dr. Leathers that Plaintiff had developed a new set of

delusions.  Dr. Leathers continued Plaintiff on Seroquel and Abilify and added two

medications, Lithium and Klonopin.  He noted a GAF score of 35.  (AR 405.)   On

June 13, 2013, Dr. Leathers again met with Plaintiff for 50 minutes.  Plaintiff stated

that she had taken Paxil, Prozac, and Zoloft in the past and had been diagnosed with

bipolar disorder when she was 19, and complained of a history of abuse by her

mother.  Plaintiff was not taking her full dose of Klonopin.  Dr. Leathers made a

change to Plaintiff's Lithium prescription to minimize her side effects of sedation,

drowsiness, lethargy, and sluggishness.  He noted that Plaintiff reported feeling

"impending doom" and being tired from her meds, and observed that she was tearful

and depressed.  (AR 400-03.)  On July 11, 2013, and August 8, 2013 Dr. Leathers

again saw Plaintiff.  In both sessions, Plaintiff reported no major concerns other than

that the Seroquel was "too sedating" and/or made her "too tired," and Dr. Leathers

---

[2]  A Global Assessment  of Functioning (GAF) score estimates a person's
psychological, social, and occupational functioning.  Diagnostic and Statistical
Manual of Mental Disorders, at 32 (4th Ed. 2000).  A GAF score of 31–40 indicates
"[s]ome impairment in reality testing or communication (e.g., speech is at times
illogical, obscure or irrelevant) or major impairment in several areas, such as work
or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids
friends, neglects family, and is unable to work; child frequently beats up younger
children, is defiant at home, and is failing at school)."  *Id.* at 34.  A GAF score of
41–50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional
rituals, frequent shoplifting) OR any serious impairment in social, occupational, or
school functioning (e.g., no friends, unable to keep a job)."  *Id.*  A GAF score of 51–
60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech,
occasional panic attacks) OR moderate difficulty in social, occupational, or school
functioning (e.g., few friends, conflicts with peers or co-workers)."  *Id.*

6

adjusted the medication.  On both dates, he noted a GAF score of 35.  (AR 398-99.)[3]

On August 21, 2013, Dr. Leathers completed a Psychiatric/Psychological Impairment Questionnaire.  (AR 366-73, the "Questionnaire.")  Dr. Leathers diagnosed Plaintiff with bipolar disorder that was severe and without psychotic features, with a present GAF score of 40 and past year GAF score of 30.  (AR 366.) He identified "clinical findings" of emotional lability, social withdrawal or isolation, and feelings of guilt/worthlessness, and listed, *inter alia*, depression, mood lability, a history of manic like symptoms, racing thoughts, difficulty in concentration and sleep, being easily overwhelmed, easy agitation, and anxiety as being among Plaintiff's symptoms.  (AR 367-68.)  He expected that Plaintiff's impairments would last for 12 months.  (AR 372.)  Of particular interest here, Dr. Leathers found that Plaintiff was *markedly limited* in a number of work-related matters, including the ability to: work in coordination with or proximity to others without being distracted: complete a normal work-week without interruptions from psychological symptoms and/or the need for an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers without distracting them or exhibiting behavioral extremes; and respond appropriately to work setting changes.  (AR 369-71.)  Dr. Leathers found that Plaintiff was *moderately limited* in the ability to:  remember locations and work procedures; understand and remember, or to carry out, one- or two-step instructions or detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; sustain ordinary routine without supervision; make simple work-related decisions; interact appropriately with the general public; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to

---

[3]  The ALJ's characterization of the medical records for these sessions with Dr. Leathers as showing a "consistent denial" by Plaintiff of "medication complaints" (AR 27) is inaccurate.

7

basic neatness and cleanliness standards; and set realistic goals or make plans independently.  (*Id.*)  Dr. Leathers opined that Plaintiff would miss work two to three times a month.  (AR 373.)

Plaintiff saw Dr. Leathers on September 13, 2013, and October 11, 2013, and she did not report any issues with her medication, although she indicated increased stress and verbal aggression.  Dr. Leathers noted a GAF score of 45 on both dates.  (AR 396-97.)  In a November 15, 2013 session, Plaintiff reported "episodes" and having flashbacks, in which she would see glitter and then vomit.  She said she had been experiencing these events since age 19.  Dr. Leathers noted a GAF score of 45.  (AR 395.)  On January 6, 2014, Plaintiff told Dr. Leathers that her Seroquel was making her too sedated and that she was feeling irritable.  He again assessed her GAF at 45.  (AR 394.)  On April 30, 2014, and May 28, 2014, Dr. Nguyen observed that Plaintiff's affect was angry, that she had poor or impaired insight, judgment, thinking, and concentration.  He also noted a GAF score of 45 on both dates.  (AR 429-30.)  On August 25, 2014, Dr. Nguyen observed that Plaintiff had an anxious mood or affect but her medication adherence was good.  He again assessed her GAF at 45. (AR 444.)

On January 15, 2015, Dr. Blankenship performed a psychological evaluation of Plaintiff.  (AR 446-76.)  The psychologist also filled out a mental impairment questionnaire.  (AR 477-81.)  Dr. Blankenship administered five psychological tests, conducted a face-to-face evaluation, and reviewed medical records spanning from February 2013, through November 2014, which the psychologist listed and discussed in detail.  Dr. Blankenship found that Plaintiff has bipolar disorder Type I.  (AR 475.)  The psychologist found that Plaintiff's short term memory is impaired and that she has a fair ability to concentrate and recall.  (AR 463-64.)  Dr. Blankenship opined that, *inter alia*, Plaintiff has:  *marked limitations* in her ability to understand and remember, and carry out, detailed instructions; *moderate to marked limitations* in concentration and persistence matters, understanding and

remembering one- and two-step instructions, getting along with co-workers without distracting them, and many adaptation matters (such as responding appropriately to workplace changes); and *moderate limitations* in remembering work-like procedures and locations, working in coordination or near others without being distracted by them, interacting appropriately with the public, asking simple questions and requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, and adhering to basic standards of neatness. (AR 480.)[4] The psychologist opined that Plaintiff would miss work more than three times per month. (AR 481.) Dr. Blankenship assessed Plaintiff with a present GAF of 52, with a prior year GAF of 50-51. (AR 475.)

Finally, two non-examining state agency reviewers rendered opinions on Plaintiff's impairments and related limitations. Neither had reviewed Dr. Blankenship's evaluation (which post-dated their opinions), and it does not appear that either had reviewed Dr. Leather's opinion set forth in the Questionnaire, even though it predated both review opinions.[5] On October 29, 2013, Eugene Campbell,

_____

[4]  The ALJ's assertion that Dr. Blankenship concluded that Plaintiff "would have at least moderate limitation in all aspects of understanding and memory, social interaction, and adaptation" (AR 27) is somewhat misleading, given that the psychologist found predominantly moderate to marked limitations in these categories (AR 480).

Defendant also mischaracterizes Dr. Blankenship's opinion, asserting that the psychologist "opined" that Plaintiff "had" "marked limitations" "since 2004." (Def. Mem. at 6.) This simply is not true. When asked if Plaintiff's limitations "apply as far back as 02/01/2007," Dr. Blankenship responded "No," then noted "possible onset when [patient] was 19 y/o." (AR 481.) Presumably, this was based on Plaintiff's report that she had experienced manic episodes when she was 19 years old. (AR 447.) Characterizing this brief comment about a "possible" onset date as a firm opinion by the psychologist as to an early onset date, when the psychologist had answered "No" about a possible earlier onset date, is disingenuous.

[5]  Neither specifically lists the Questionnaire among the records reviewed and one of the reviewers stated that there were "No" medical source and/or other source opinions about Plaintiff's limitations that were more restrictive than his opinion (AR 117) – a response that certainly was wrong if he had reviewed the Questionnaire.

a psychologist, opined that Plaintiff had no understanding and memory limitations, moderate limitations in three sustained concentration and persistence categories but no significant limitations or no limitations at all in five other such categories, a moderate limitation in her ability to complete normal workdays and weeks without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and moderate limitations in three social interaction categories and no significant limitations in two other such categories. Dr. Campbell opined that Plaintiff can follow basic work instructions and one- to two-step tasks, consistently follow a schedule, make decisions and complete basic work tasks, and can adapt to changes and the normal stressors of full-time work. (AR 69-72, 74-78.) On February 27, 2014, Thomas Unger, M.D., a psychiatrist, rendered an almost identical opinion, with the exception of finding one less moderate limitation in the sustained concentration and persistence category. (AR 108-17.)

### 3. The Decision With Respect To RFC

The ALJ gave "little weight" to Dr. Leathers' opinion set forth in the Questionnaire that Plaintiff would: have moderate to marked limitations in all functional areas; and miss two to three days of work a month. (AR 28.) The ALJ's sole stated reason for rejecting the treating psychiatrist's opinion was that it was "inconsistent with his own treatment records," because Plaintiff received "only routine care" and her symptoms were controlled effectively with "conservative medication." (*Id.*)

The ALJ also gave "little weight" to Dr. Blankenship's opinion *in toto*, concluding that the opinion was "not supported by the longitudinal evidence of record and appears based largely on [Plaintiff's] subjective allegations" made on the date of the examination. (AR 28.)

In contrast, the ALJ gave "significant weight" to the opinions of the two state agency reviewers that Plaintiff is capable of performing simple, routine, and

repetitive tasks with limited interpersonal contact. (AR 28.) The ALJ asserted that the state agency reviewer opinions were "consistent with the evidence of record as a whole (including that received at the hearing level) including clinical observations, treatment history, and [Plaintiff's] demonstrated functional ability." (*Id.*)[6]

### 4. The ALJ's Treatment Of The Opinions Of Dr. Leathers And Dr. Blankenship Was Reversible Error.

With respect to Plaintiff's functional limitations, the opinions of the two state agency reviewers contradicted the opinions of Dr. Leathers and Dr. Blankenship in a number of significant respects. Accordingly, to properly reject the opinions of the treating psychiatrist and examining psychologist and, instead, favor the opinions of the state agency reviewers, the ALJ was required to set forth specific and legitimate reasons supported by substantial evidence for such a rejection. The ALJ did not do so.

*Dr. Leathers:*

The ALJ summarily rejected the Dr. Leathers' opinion for a sole stated reason, namely, that the opinion ostensibly was inconsistent with the treatment the psychiatrist provided to Plaintiff, which, according to the ALJ, involved conservative medication that effectively controlled Plaintiff's symptoms. This reason is not legitimate.

---

[6]     The Commissioner proffers three additional reasons that she feels justified rejecting Dr. Leathers' opinion, including a short treatment period, the failure to show that Plaintiff's mental impairment had existed for 12 months as of the date of Dr. Leather's opinion, and the questionnaire format of the opinion. (Def. Mem. at 4, 5-6.) The ALJ, however, did not articulate or rely on any such reasons as the basis for rejecting Dr. Leathers' opinion. (*See* AR 28.) The ALJ's decision cannot be affirmed based on the Commissioner's post hoc rationalizations. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency").

As noted earlier, the ALJ's assertion that Plaintiff consistently denied having any complaints about her medication is plainly belied by the record. *See Reddick v. Chater*, 157 F.3d 715, 721-23 (9th Cir. 1998) (reversal may be warranted when the ALJ erroneously characterizes the evidence of record). The ALJ's related assertion that the medication "controlled" Plaintiff's symptoms also is not supported by substantial evidence. The Questionnaire assessed Plaintiff's mental status for the period May 1, 2013, through July 11, 2013. During that time, Dr. Leathers observed that Plaintiff: felt impending doom; was tired as a result of her medication; believed her medication was not working; was tearful and depressed; and complained of poor sleep. (AR 400-03, 405.) He listed as his clinical findings emotional lability, social withdrawal or isolation, and feelings of guilt or worthlessness, as well as such symptoms as depression, difficulty concentrating and sleeping, easily agitation, and anxiety. (AR 367-78.) These findings do not evidence a patient whose symptoms were effectively controlled by her medication. Moreover, Dr. Leathers noted GAF scores of 35 – indicators of serious symptoms and impaired functioning – hardly indicating the complete symptom control and improvement the ALJ conclusorily finds.

The fact that Plaintiff did not report any issues with her medication in the two monthly visits *after* Dr. Leathers issued the Questionnaire does not render the ALJ's factual misstatement harmless. Apart from the fact that these visits occurred after the opinion in question was rendered, at the same visits, Plaintiff reported increased stress and verbal aggression. Moreover, the Ninth Circuit has emphasized that, with mental illness-based impairments, "it is error for an ALJ to pick out a few isolated instances of improvement," because mental illness symptoms "wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Id.* In *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001), the Ninth Circuit found reversible error

under facts similar to this case. The ALJ rejected a treating psychiatrist's opinion that the claimant's symptoms from her depressive/panic disorders caused her to have marked functional limitations, asserting that the opinion was inconsistent with the psychiatrist's treatment notes, which indicated that medication was controlling the claimant's panic attacks and a "great improvement" in her condition. *Id.* at 1204-05. The Ninth Circuit found that, as in this case, the ALJ had selectively relied on only portions of the treatment notes and exaggerated their contents, and thus, there was no inconsistency with the treatment notes. *Id.* at 1205. "[The psychiatrist's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Id.* Here too, the August 2013 Questionnaire opinion must be viewed in the context of his entire diagnostic picture, which indicated a patient suffering from a variety of symptoms and who complained periodically about adverse medication effects, who he consistently assessed with GAF scores that were compatible with a finding of moderate and marked functional limitations. The ALJ's finding of a medication regimen that so controlled Plaintiff's symptoms that she could work is not supported by substantial evidence.

In addition, the ALJ's assertion that Dr. Leathers' opinion supposedly contradicts his provision of "only routine care" to Plaintiff is neither specific nor legitimate. The ALJ's position, in essence, is that if Plaintiff really is as mentally ill as Dr. Leathers found her to be, the psychiatrist would have conducted or recommended a different and more extreme course of treatment than therapy sessions and a cocktail of psychotropic medications. None of the medical opinions of record, however, state or even intimate that the treatment Plaintiff was receiving was somehow inadequate or too conservative for someone with her psychiatric condition, and indeed, the ALJ does not identify any additional or more aggressive

13

treatment that someone with Plaintiff's symptoms would or should have been receiving. Nor could the ALJ do so. The ALJ was not permitted to render her own medical opinion regarding medical findings and examination results and to then conclude that some other treatment would have been appropriate for a patient with bipolar disorder who suffers from the symptoms Dr. Leather observed. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making her own lay medical assessment beyond that demonstrated by the record); *Winters v. Barnhart*, No. C 02-5171 SI, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert."); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (an ALJ may not "'set his own expertise against that of a physician'" who had proffered an opinion and "'should not have engaged in his own evaluations of the medical findings'") (citations omitted); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); *Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747, 749 (1st Cir. 1987) (an "ALJ may not substitute his own layman's opinion for the findings and opinion of a physician").

Moreover, no authority supports the ALJ's apparent belief that a treating psychiatrist's opinion that a claimant has moderate or marked functional limitations is valid only if the psychiatrist ordered non-"routine" treatment. Nothing in Social Security jurisprudence requires mentally impaired claimants to be subjected to harsh treatments – whether involuntary psychiatric hospitalizations, electroshock, or whatever other non-"routine care" the ALJ apparently believes is necessary to prove that a mentally ill claimant actually suffers from the functional limitations found by her treating psychiatrist – before they can be found to be disabled. *See Matthews v. Astrue*, No. EDCV 11-01075-JEM, 2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012) (opining that a claimant with a mental health impairment -- who had been taking psychotropic medication and receiving outpatient care – "does not have to

undergo inpatient hospitalization to be disabled"; and rejecting the ALJ's "conservative treatment" rationale). As of the time of Dr. Leathers' opinion, Plaintiff had been prescribed Seroquel (an antipsychotic), Abilify (same), Lithium (a psychiatric medication), and Klonopin (a sedative). To parrot another decision, "[i]t is entirely unclear to the court how treatment with such medications could be characterized as conservative." *Rice v. Colvin*, No. 2:15-cv-1763 DB, 2017 WL 85815, at *5 (E.D. Cal. Jan. 10, 2017); *see also Carden v. Colvin*, No. CV 13-3856-E, 2014 WL 839111, at *3 (C.D. Cal. March 4, 2014) (collecting cases finding that mental health treatment is not "conservative" "within the meaning of social security jurisprudence" when such treatment involved medications of the sort Plaintiff was prescribed here); *Baker v. Astrue*, No. ED CV 09-1078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment.").

The ALJ erred in finding Dr. Leathers' opinion should be accorded little weight (or less), because the ALJ failed to articulate specific and legitimate reasons supported by substantial evidence for doing so.

### Dr. Blankenship:

The ALJ rejected Dr. Blankenship's opinion on the grounds that it: (1) was not supported by the longitudinal evidence of record; and (2) appeared to be based largely on Plaintiff's "subjective allegations." The first reason is not specific and the latter reason is not legitimate.

Dr. Blankenship issued a 30-page evaluative report in which, as noted earlier, she described in 11 pages of detail her review of the medical records spanning from May 2013, through November 2014 (*see* AR 448-58). There is some irony in the ALJ's failure to acknowledge this aspect of Dr. Blankenship's report and cursory dismissal of it as "not supported by the longitudinal evidence of record" and, instead, favoring the cursory opinions of the state agency physicians on the stated

ground that their opinions "are consistent with the evidence of record as a whole . . . including clinical observations." (AR 28.) As briefly noted earlier, it seems that the state agency reviewers did not review all of the critical medical records available to them, including Dr. Leather's opinion. Indeed, it is not clear that either agency reviewing physician reviewed Dr. Leather's treatment notes other than the June 13, 2013 notes, which were briefly mentioned by Dr. Campbell. (AR 72-73.) But in any event, the ALJ fails to point to *what* "longitudinal evidence" in the record, if any, fails to support Dr. Blankenship's opinion. Given Dr. Blankenship's detailed review of the medical evidence of record (as well as her extensive testing, as discussed below), the ALJ's vague and generic dismissal of the psychologist's opinion as unsupported by other evidence, without explanation, was not specific or legitimate. An ALJ "errs when he . . . assigns [a medical opinion] little weight while . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13; *see also, e.g., Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017) (ALJ's provision of little weight to treating doctor's opinion on ground that it was inconsistent with his treatment notes was error, when ALJ failed to point to anything in the treatment notes or the clinical record that contradicted his opinion); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (reversing and remanding the ALJ's rejection of treating physician's opinion as "unsupported by sufficient findings and contrary to the preponderant conclusions" as improperly conclusory even though the ALJ had reviewed the medical evidence, because this conclusion did not "achieve the level of specificity" required under Ninth Circuit precedent).

The ALJ's second ground for rejecting Dr. Blankenship's opinion – that it purportedly was based primarily on Plaintiff's "subjective allegations" – plainly is not legitimate. Along with her detailed review of the medical record, Dr. Blankenship noted Plaintiff's history and current complaints as relayed by Plaintiff (AR 447-48, 458-60), but also performed her own mental status examination (AR

16

462-64).  As noted earlier briefly, Dr. Blankenship administered five tests – the Revised Hamilton Rating Scale for Depression, the Wechsler Abbreviated Scale of Intelligence, the Subjective Profile of Personal Effectiveness, the Hooper Visual Organizational Test, and the Pain Management Symptom Checklist.  (AR 447, 464.)  Dr. Blankenship also administered the Pain Patient Profile test, which is a self-report instrument that produces three clinical scales.  (AR 464.)  This battery of tests was administered "to further assess [Plaintiff's] self-reports" and to "evaluate validity and consistency as well as severity of symptoms."  (*Id.*)  The psychologist's opinion described her administration of the tests and results obtained.  (AR 464-72.)  Dr. Blankenship's discussion made clear that her opinion was reached based on multiple factors, including her "clinical interview, the review of medical records and the psychological testing."  (AR 472-73.)

    If a physician's opinions "are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the [physician's] opinion . . .; [h]owever, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."  *Ghanim*, 763 F.3d at 1162 (citations omitted).  As explained in *Ryan*, when, as here, an examining physician performs a comprehensive psychiatric evaluation and records the symptoms relayed by the claimant as well as his own clinical observations of the claimant, "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."  528 F.3d at 1199-200.  There is nothing about Dr. Blankenship's opinion that indicates a blind reliance on Plaintiff's subjective complaints alone.  Given the battery of clinical testing performed by Blankenship and the tenor of her analysis, no fair reading of the opinion could yield the observation made by the ALJ that the psychologist principally relied on Plaintiff's

subjective allegations rather than a professional evaluation supported by clinical testing and findings. *See Ryan*, 528 F. 3d at 1200 ("There is nothing in the record to suggest that [the examining psychiatrist] disbelieved Ryan's description of her symptoms, or that [the examining psychiatrist] relied on those descriptions more heavily than his own clinical observations in reaching the conclusion that Ryan was incapable of maintaining a regular work schedule.").

The ALJ's mischaracterization of Dr. Blankenship's opinion was not a legitimate reason for rejecting it and was error. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result"); *see also Buitron v. Berryhill*, 680 Fed. Appx. 618, 619 (9th Cir. March 13, 2017) reversing and remanding for an award of benefits when ALJ mischaracterized treating doctor's opinion); *see also Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) (reversing when ALJ rejected credited a non-examining psychologist's opinion over that of an examining psychologist for the ostensible reason that the latter's opinions were not derived from testing or examination or prior medical records, because contrary to the ALJ's stated reason, the examining psychologist stated that his opinion was based on his prior examination of the claimant and administration of a battery of tests).

The ALJ's error in according little weight to the opinions of Dr. Leathers and Dr. Blankenship was not "inconsequential to the ultimate nondisability determination." *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The hypothetical to the vocation expert ("VE") propounded by the ALJ – which led to the VE opinion and ALJ findings that several categories of medium, unskilled jobs exist in significant numbers in the national economy that Plaintiff can perform – did not include the marked and moderate work-related limitations found by Dr. Leathers and Dr. Blankenship. (AR 62-63.) When the hypothetical was modified to include certain of the limitations found by the treating psychiatrist and

the examining psychologist – such as two or more days a month absences, or a marked limitation in the ability to respond appropriately to criticism from supervisors, or limitations on the ability to maintain an ordinary routine without extra supervision – the VE opined that no jobs exist in the national economy for such an individual. (AR 63-66.) The ALJ's error, therefore, is reversible, because it cannot be found to be harmless. On remand, the ALJ shall reevaluate the weight to be afforded the opinions of Dr. Leathers and Dr. Blankenship. If the ALJ finds appropriate reasons for not giving the opinions controlling weight, the ALJ must articulate them clearly through specific and legitimate reasons supported by substantial evidence in the record.

### B. Issue Three

Issue Three requires little discussion at this juncture. Plaintiff argues that the hypothetical to the VE failed to account for the ALJ's statement, at Step Three, that Plaintiff has moderate difficulties in concentration, persistence or pace.[7] Respondent devotes ample discussion to arguing why the ALJ's statement can be ignored and the RFC assessment was correct and, thus, the hypothetical to the VE based on the RFC alone was free of error. Given the Court's conclusion that the ALJ erred in rejecting the opinions of Dr. Leather and Dr. Blankenship and must reconsider the weight to afford them, the ALJ may be required to modify her RFC assessment,[8] which as formulated, effectively disregarded those opinions *in toto*.

---

[7]     The hypothetical the ALJ posed to the VE stated that the individual would "be able to sustain attention and concentration skill [*sic*] sufficient for work like tasks, with usual pace and persistence." (AR 62.)

[8]     While not an issue raised by Plaintiff, the Court notes that, in formulating an RFC assessment that included "reasonable pace and persistence" (AR 26), the ALJ stated that she had given significant weight to the opinions of the state agency reviewers (AR 28). Dr. Campbell and Dr. Unger, however, found that Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods. (AR 77, 116.) In the hypothetical posed to the VE, the ALJ used

Accordingly, the Court declines to assess the validity of a VE hypothetical that may be mooted by further proceedings.[9]

## V. CONCLUSION

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* A remand for an immediate award of benefits is appropriate "only in 'rare circumstances.'" *Brown-Hunter v . Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

The Court finds that remand is appropriate because the circumstances of this

_____

the term "usual pace and persistence." (AR 62.) Given these discrepancies, on remand, the ALJ should take care to proffer a hypothetical that reflects the actual functional limitations found.

[9]    Given the remand of this case and the effect it may have on the ALJ's analysis across the board, the Court has not reached the remaining issue raised by Plaintiff (Issue 2, regarding Plaintiff's credibility) except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. The Court notes, however, that on initial review, one of the ALJ's reasons for finding Plaintiff not credible – her alleged inconsistent statements regarding sleep issues (AR 28) – is not persuasive. The single treatment note on which the ALJ relies (AR 445) does not, in the Court's view, evidence contradictory statements by Plaintiff. One can be sleepy or exhausted in the daytime due to poor sleeping at night and, thus, have difficulty getting things done, yet at the same time have insomnia. On remand, the ALJ may wish to reconsider the appropriateness of this state reason as a basis for her credibility assessment, as well as reconsider the adequacy of the other stated bases for finding Plaintiff not credible.

case do not preclude the possibility that further administrative review could remedy the ALJ's errors. At a minimum, in evaluating the opinions of Dr. Leathers and Dr. Blankenship, the ALJ should consider the factors called for under 20 C.F.R. §§ 404.1527(c) and 416.927(c). *See Trevizo*, 871 F.3d at 675. The Court therefore declines to exercise its discretion to remand for an immediate award of benefits. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, "except in rare circumstances"); *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.").

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the Decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: February 14, 2018

_____

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE